The first case of the afternoon is 4090490 Pickle v. Springfield Stallions. For the appellant, Ms. Sisko, and for the appellee, Ms. Borden, you may proceed. Your Honor, may it please the Court? Counsel, Your Honor, on April 14, 2007, my client, Ms. Pickle, was injured while a spectator at an arena football game that was presented by the defendants. On that date, she was seated in, or she was situated in the spectator area in the front row. The defendants controlled the playing field as well as the spectator area that she was in. Between my client and the playing field was a retaining wall that was approximately four feet high. At some point during the game, a football player jumped into the air to catch a football, and when he landed, he fell over the retaining wall and landed on my client, causing her to sustain injuries. A suit was filed on behalf of my client against the defendants. It sounded in negligence, and the allegations were that the playing field was, or the spectator area was situated too close to the playing field, or at least that portion of the area that my client was in, and that the retaining wall was too short to prevent contact between players and my client. There were no allegations in the complaint to suggest, and there are none, to suggest that the players were in any way engaging in misconduct, or that they were acting inappropriately when they jumped in the air to catch the football. Likewise, the defendants have not presented any affirmative defenses at this point to suggest that my client was contributorily negligent, or that she assumed a risk, or that she should have known that there was likely to be contact between the players and between my client. The defendants filed a motion to dismiss based solely upon the contact sports exception, and that contact sports exception is the sole basis of the trial court's granting of the motion to dismiss. And the only issue before the court today is whether or not the contact sports exception bars liability in this particular case. We would assert that the contact sports exception simply does not apply, or does not bar liability in this case, for two separate and distinct reasons. Number one, my client was not a player, and she was merely a spectator. The contact sports exception, as it has been developed in Illinois, provides that there is no liability on the part of players or their managing organizations based on mere negligence when another player is injured as a result of participation in a contact sport. And in this situation, my client was simply a spectator and not a player, and for that reason alone, the exception we would assert does not apply. Now the fact that she was a spectator as opposed to a player is a fact that's important, because number one, in every Illinois case that's dealt with this issue, the contact sports exception has applied only when it is another player who's been injured. In this case, if new law were to be, if the law were to be expanded so that a spectator is also someone whose claim is barred based on ordinary negligence and based upon this exception, then what would have to be looked at is whether or not this sport is a contact sport in the sense of there being contact between players and spectators under ordinary circumstances. We have never disputed that arena or indoor football or any type of football is indeed a contact sport, but it's only a contact sport in the sense of contact between players. There are no facts and evidence at this point to suggest that contact between players and spectators is an ordinary part of the game of indoor football. There have certainly been allegations to that effect made in the defendant's motion to dismiss, but those allegations aren't based upon any affidavits. They are not based on any testimony or any evidence of any kind. So any suggestion that there is ordinarily contact between players and spectators in a sport such as this is something that's just not before the court at this point. We would also assert that as an independent basis, the contact sports exception does not apply in this case because it is not predicated upon the misconduct or negligence of any of the players. In all of the Illinois cases that deal with this issue, the contact sports exception is applied when either it's based upon direct misconduct or negligence of the players or it's based upon the negligence of the organizational entities as it relates to their supervision of the conduct of the players and so forth. And in this case, we don't have that. This is simply a seating issue in this case. This is, in essence, a premises liability case. We're not asserting that there's anything wrong with what happened on the field of play or there's anything wrong with the way that the players or the game was managed. We are simply alleging that there was negligence with respect to where the spectators were designated by the defendants to sit in relation to the playing field and that there were not adequate protections in place to protect spectators from basically what was going on on the field. And again, there has been no affirmative defense in terms of assumption of the risk or contributory negligence at this point. We simply argue that the contact sports exception does not address this type of situation and we would respectfully ask that this court reverse the order that was entered in the trial court and that this case be remanded for further proceedings. Baseball. Tell me about baseball. Your Honor, that's a situation where baseball, I guess I would assert, is not a contact sport. So what happens when a ball is hit into the stands and strikes a spectator? Well, in that situation, obviously there's contact between what's going on on the field and the spectators and I would appreciate that. And in a situation like that, there may or may not be affirmative defenses available to the defendants, such as assumption of the risk or contributory negligence or that the person who's injured should have known that they might be contacted by a baseball and that sort of thing. But that's not the type of issue that's before the court. I would assert that that would absolutely not be a situation where the contact sports exception would come into play. Contact sports, really by definition, as we understand the case law, involves contact between the players. Certainly not contact between players and spectators. Well, might those defenses arise later in this case? Your Honor, we would, obviously I can't speak for what the defendants might assert later on. We would assert that in this case, such defenses would not be availing. At the same time, we do appreciate that those defenses might be raised and as affirmative defenses, it would be the obligation of the defendants to plead those defenses and to prove them. And that hasn't been done yet and we are confident that we would have responses to those defenses, which haven't been raised at this point. Does the record show this was a special seating area? By special, I mean somewhere that you could gravitate to by choice or was it assigned seating by ticket? Your Honor, to be honest, facts as to that particular issue are not in evidence. Now, we anticipate there would be testimony. First of all, we have alleged that where she was at was an area that was designated by the defendants for the spectators. But you allege that where they can sit or stand. And there's a distinction in my, I mean, I'm just curious. I mean, if some people are sitting and other people are standing, you can't see. So I'm asking if there is anything in the record that shows what that area was. There is not anything in the record that we do anticipate there would be testimony in that regard. Sure. Thank you. We have no questions. Thank you, Your Honor. May it please the Court. First, initially, I would like to point the Court's attention to the recent Illinois Supreme Court decision of Karras v. Striegel. Based on that ruling, the issue in this case really does not go to whether the sports exception can be used by organizational defendants, such as in this case. In Karras, the Illinois Supreme Court specifically found that the contact sports exception can be used by organizational defendants if three certain factors are met. The issue in this case really comes down to whether the organizational defendants, the alleged negligent acts that affected the spectator injury in this game that arose out of the indoor football game, whether the contact sports exception can be applied to this spectator. In this case, the trial court's ruling should be affirmed because the circumstances alleged in the complaint meet the three factors laid out by the Illinois Supreme Court in Karras, which determined that a plaintiff's cause of action against an organizational defendant was barred by the contact sports exception. I'm going to start by just responding to a few of the points brought up by appellant's counsel. One of the issues raised is that there are no issues of player negligence. This issue was dealt with by the Karras court, Illinois Supreme Court, in that there are allegations of organizational misconduct that people who were in charge of the game weren't enforcing certain rules and certain policies. And the Illinois Supreme Court laid out the three factors to determine whether an organizational defendant can bar another individual's negligence cause of action. In these three factors, there is no mention that it must be predicated on player negligence. Instead, it looks at the inherent risks involved in the game, the relationship between the parties, and whether extending negligence to on the part of the organizational defendants in this context would change the game in some way. So from the Karras rule, there need not be any issues of player negligence in order to implement the contact sports exception. Appellant also has raised the fact that we are able to plead later on issue affirmative defenses of assumption of the risk or contributory negligence. While the contact sports exception implicitly takes those considerations into account, in the Illinois Supreme Court decisions of Pfister and also in the Fourth District Court decision in Stewart in which they found that an umpire in a baseball game could use the contact sports exception bar the umpire's negligent action, the reasoning behind the contact sports exception is an implicit consent by a participant or the person bringing the action that there may be possible contact due to the nature and the context of the sport. Let's ask about baseball again. Yes, Your Honor. Bats go flying. Balls go flying, whether foul or home runs. Risk of injury is certainly there. You see there's no liability if you buy a ticket to go to Wrigley Field  There's no liability? I think in baseball it's a special situation. It has to do, I believe, with balls or bats flying. There is a baseball act in Illinois that would govern, by statute, govern those issues. However, in baseball, if there are issues of players running into each other such as in the Stewart case where an umpire was run into by a player, courts have used the contact sports exception when it's physical contact between the players. I want to try to create a situation where it's players doing something that harmed a spectator, not another player or even an umpire who's on the field part of the game. So let's try to keep our examples to those kind of situations. In those situations, under the Karas test, you would look at the inherent risks in the game and whether physical contact between the spectator and the player is something that occurs during the course of the game. Now in Illinois, there haven't been any cases dealing with a specific spectator and whether it's an inherent risk of the game. However, other jurisdictions, such as California in the Yarbor case that we cited, have to do with the game of basketball. And in there, the court reasoned, it even said, you can turn on a game of basketball on TV and routinely see players running to the stands to go chase the ball, running into the first row where spectators are seating. And the court found that there is an inherent possibility in the sport of basketball for players going into the stands and having that contact occur. The same in the Gallagher case, which was a football game as well. But wouldn't the analysis in those kind of cases be an assumption of the risk rather than an absolute bar of liability? Well, the contact sports exception takes into account because this is a special situation, when courts reason through the contact sports exception they look at kind of the implied consent that someone gave that if I sit in the seat, physical contact from the player may occur. So let's go back to basketball. If you sit in the first or second or maybe even the third rows, it's a declining assumption of a risk. But it's not impossible for you to get up to the 6th or 7th row, perhaps. At what point do you draw a line and say, this is your secure area and this is the area where you're at risk? Well, of course, when looking at the inherent risk, just look at public policy and look at, there's no way to draw an exact line with each game and say, pass the third row, this is not negligent. Pass the second row, this is not negligent. But from the facts of this case, we know that the plaintiff sat in an area close to the field where a player jumping for the ball happened to go and go into the front row. So the question comes, whether that contact and being that near the field is an inherent part of the sport of indoor football or any type of arena sport. Was there anything about the physical configuration of the field vis-a-vis the seating areas that could have been modified to increase the safety of the spectators? Your Honor, well, what's pled in the complaint, they're alleging that the wall was too low. At this point, we don't know what could have been done or how high the player jumped. Or what could have been done to prevent him from going across the wall. I think what's important here is to look at the fact that what a plaintiff is seeking to do is to say that you can bring a negligent action against someone for seating individuals in an area close to the field. And whether or not that would cause physical contact, you have to be careful that the negligence doesn't open up the door for organizational defendants that they'll have to make sure the negligence action could have organizational defendants make sure that no physical contact could ever be made between the players. Because that way, anyone could file a negligence action saying that the player, you know, contacted me in some way. So I think by buying a negligence action, you're not making organizational defendants move the spectators far away from the playing field or putting up a wall that is 10 feet high or a clear glass wall or something in that regard. Because like in hockey, that's exactly what you have. You've got the wall, which stands about 3 or 4 foot high and then you've got 10 feet of plexiglass beyond that. Which may be, knowing hockey fans, may be more greater safety for the players than players to the fans. Yes, Your Honor, safety for the fans, but I think also similar to hockey, looking at a baseball, which has a baseball statue and you have flying balls and flying bats, hockey also has the puck. So I think the wall might also be in regards to, you know, the puck flying higher. The puck obviously can fly higher than someone could jump or be pushed over the wall. So the same venue hosts a circus and an acrobat, not on a high wire, but over near the periphery, falls into the first row and hurts me. Totally different case because there's no contact sport? Well, that's about the analysis would have to be is whether being an acrobat would be a contact sport. I'm assuming for the moment that it's... I'm trying to think of some other physical activity that we would... I don't know how it becomes a contact sport. I guess, is there a definition for what a contact sport is? Is it only if there's contact between the players? There aren't any players in a demonstration of acrobatic skill or entertainment. Well, Your Honor, in the Illinois cases, the determination of what is a contact sport has only had cases which involve two participants. So, of course, that hasn't been decided by Illinois courts. Usually they analyze whether physical contact would routinely occur during the game and the sport. What Karras did with the organizational defendants was when it stated whether contact was inherent. You look at that in the spectator context. Let me look at the exact statement that Karras had. The circumstances of the sport and its inherent risks. So if you're looking at this case with... a spectator, it's whether there is an inherent risk during the game. As noted by the California case in Yarbor, that physical contact does occur during a game between a spectator and a player who's going out of bounds or going for the ball or whatnot. And I also believe in Karras, they cited a California case, which actually had to do with... It wasn't your traditional contact sport, but it was diving or something in that regard. And they looked at that to expand it to organizational defendants. Anything further right now? Also, appellant's counsel has brought up the fact that we are in a motion to dismiss phase and we haven't had the typical discovery, depositions, etc. Importantly, the Karras case was decided at a motion to dismiss stage. The court looked at other cases, both inside and outside Illinois, as well as public policy, to determine that the plaintiff's action was barred in that case. So when you look at the inherent... nature of indoor football, looking at other courts that have looked at spectator injuries, it is apparent that contact does occur between a player and a spectator. This is inherent in the contact sports exception when someone purchases a ticket, chooses to sit in the front row, they want to be close to the action. It's an implicit consent, consenting that physical conduct may occur. And that is the type of action that the contact sports exception would bar in this case. So we would ask that the trial court's ruling be affirmed due to the contact sports exception and pursuant to the Illinois Supreme Court's ruling in Karras. Thank you. Rebuttal. General, if I can just address a couple of points that were made. There was reference a moment ago to the Karras case. We are not disputing that the contact sports exception applies to organizational defendants. Clearly it does, and Karras points that out. But in the Karras case, the allegations were directed at the organizational defendants, but they involved their regulation and supervision of the conduct of the players. So I would assert that even that is still different than the case that's at bar. Also, as counsel pointed out, one of the factors that's taken into consideration in Karras is the inherent risks in the game. And in this case, while there's certainly contact between the players, there are no facts and evidence right now about the inherent risks in this game as it pertains to contact between players and spectators. No discovery has been done at this point and there's just no facts and evidence on that issue. In my brief, I had used the example of the ultimate contact sport of boxing. Boxing is an example of something that's clearly a contact sport, and yet it's not a sport where there is an inherent risk or any substantial risk necessarily of contact between the participants and the spectators. So simply because something is a contact sport does not mean that there is an inherent risk of contact between players and spectators. So again, we would respectfully ask this Honorable Court to reverse the decision at the trial court level. Thank you, counsel. I take this matter under advisement.